```
                               UNITED STATES DISTRICT COURT
                                 DISTRICT OF CONNECTICUT

------------------------------x
                              :
THOMAS ZINK                   :    Civ. No. 3:19CV00362(SALM)
                              :
v.                            :
                              :
HARTFORD CORRECTIONAL         :
CENTER, et al.                :    November 24, 2021
                              :
------------------------------x
```

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Thomas Zink filed this action as a self-represented party pursuant to 42 U.S.C. §1983, alleging that the defendants violated his rights under the Fourteenth and Eighth Amendments to the United States Constitution. Plaintiff is now represented by counsel. Counsel has summarized plaintiff's claims as alleging "that he was subject to cruel and unusual punishment and deliberate indifference to his serious medical needs by defendant state officials." Doc. #28 at 2.

Pursuant to Federal Rule of Civil Procedure 56(a), all defendants move for summary judgment on all of plaintiff's claims. For the reasons set forth below, certain claims are **DISMISSED**, upon review pursuant to 28 U.S.C. §1915A. The defendants' motion is **GRANTED**, as to all remaining claims.

I.   **BACKGROUND**

Plaintiff names as defendants the following parties: Hartford Correctional Center, UConn Health Center, Deputy Warden

Murphy, Medical Supervisor Avery, Doctor Laplante, Lt. Riveira, Lt. Randolph, John Doe Correctional Officers #1, #2, #3, #4, and #5, and Nurse John Doe. See Doc. #1 at 1. Plaintiff expressly alleges that defendants Murphy, Avery, Laplante, Randolph, and Nurse John Doe work at Hartford Correctional Center ("HCC"). See Doc. #1 at 2-3. Although he makes no express allegation regarding the employment of defendant Riveira, the allegations of the Complaint indicate that Riveira interacted with plaintiff only at HCC, in April 2017. See Doc. #1 at 6. Plaintiff also makes no express allegation regarding the employment of the John Doe Officers, but they are alleged to have committed a use of force against plaintiff at HCC on April 12, 2017. See Doc. #1 at 5-6. All defendants are sued in both their individual and official capacities. See id. at 3-4.

Plaintiff alleges that on April 12, 2017, while he was housed at HCC, he was taken to the restrictive housing unit ("RHU") because contraband was found in his cell. See Doc. #1 at 4. During the escort from his cell to RHU, plaintiff alleges, the John Doe Officers who were moving him "twisted" his "wrist and fingers upward and subsequently breaking his hand." Doc. #1 at 5 (sic). Plaintiff "was then escorted directly to medical to be seen by a nurse." Id.

In the Complaint, plaintiff alleged that his wrist was broken, and that he asked for treatment throughout the following

~ 2 ~

weeks and months, but received none. See id. at 6-7. He also alleged that he had filed grievances relating to his wrist and hand, before being transferred from HCC to MacDougall. See id. at 7. At summary judgment, plaintiff no longer pursues these particular allegations. As described in more detail below, he does not contest defendants' evidence showing that he did not complain of any pain in his wrist or hand, and that he did not file any grievances while housed at HCC.

In support of their motion for summary judgment, defendants have submitted a video depicting the entire transport of plaintiff to RHU on April 12, 2017. See Doc. #45. The Court has viewed the video. Contrary to the allegations of the Complaint, at no time is there any struggle between plaintiff and the escorting officers. He requests medical attention for a leg injury, but does not mention his hand or wrist, and at no point is he seen or heard to be "screaming and pulling away in pain an agony." Doc. #1 at 5. When he requests medical attention for his leg he is taken -- slowly and calmly -- directly to medical, where he reports no issues relating to his hands or wrists.[1]

On or about October 19, 2017, plaintiff had a medical

---

[1] The undersigned has viewed many recordings of in-custody encounters between detainees and officers. This encounter may be the least confrontational such encounter the undersigned has ever seen. Plaintiff and the officers all remain calm throughout the encounter, and there is not the slightest indication of misconduct by any officer involved.

appointment at UConn Health Center, and his wrist was x-rayed, revealing a fracture. See Doc. #1 at 7. He had surgery on his wrist on March 10, 2018, but contends he has not received adequate follow-up care. See id. at 8.

The Complaint asserts claims for excessive use of force, deliberate indifference to serious medical needs, and failure to train/supervise. See Doc. #1 at 2.

## II.  LEGAL STANDARD

A review of the docket reveals that the Complaint in this matter was never reviewed pursuant to 28 U.S.C. §1915A. Such a review is required.

> **(a) Screening.** -- The court **shall** review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> **(b) Grounds for dismissal.** -- On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint --
>
>> **(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>> **(2)** seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. §1915A (emphasis added). The Court will therefore review the claims in the Complaint under this provision, in addition to considering the summary judgment arguments.

> The standards governing summary judgment are well-settled. Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and

> admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)[.]

Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002). Summary judgment is proper if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." Marvel Characters, Inc., 310 F.3d at 286. The moving party may discharge this burden by "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

In deciding a motion for summary judgment, the Court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable

inferences against the movant." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citation and quotation marks omitted). "If there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." Am. Home Assur. Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006) (citation and quotation marks omitted).

**III. DISCUSSION**

    **A. Defendants Hartford Correctional Center and UConn Health Center**

Plaintiff names HCC and UConn Health Center ("UCHC") as defendants in the caption of the Complaint. See Doc. #1 at 1. "It is well-settled that a state agency is not a 'person' within the meaning of §1983." Torrence v. Pelkey, 164 F. Supp. 2d 264, 271 (D. Conn. 2001). Both HCC and UCHC are agencies of the State of Connecticut. "Accordingly, all claims against Defendants UConn Health and the Connecticut Department of Corrections must be dismissed in their entirely, pursuant to 28 U.S.C. §1915A(b)(1), because neither entity is a person within the meaning of §1983." Siminausky v. Starkowski, No. 3:15CV00159(VLB), 2016 WL 236208, at *6 (D. Conn. Jan. 20, 2016).

    **B. John Doe Defendants**

The Complaint names six "John Doe" defendants; five are

alleged to be correction officers, and one is alleged to be a nurse. See Doc. #1 at 1. The Complaint was filed on March 11, 2019. The claims against the John Doe Nurse expressly relate to plaintiff's first encounter with medical personnel on April 12, 2017. See Doc. #1 at 5. The claims against the John Doe Officers relate to the use of force alleged to have occurred on the same date. See id. at 4-5. There is no mention of any John Doe defendant in relation to any other allegations of the Complaint.

A defendant must be served "within 90 days after the complaint is filed[.]" Fed. R. Civ. P. 4(m). This matter has been pending for more than two years, and plaintiff has had the benefit of counsel for 23 months. See Doc. #16. No apparent effort has been made to identify or serve the John Doe defendants.[2] The Court therefore finds that all claims against any John Doe defendants should be **DISMISSED**, for failure to effect service, and for failure to prosecute. Cf. Waterman v. Nelson, 195 F.2d 523, 523 (2d Cir. 1952) ("The complaint was properly dismissed for failure to effect service and prosecute the action.").

C. **Official Capacity Claims**

Plaintiff asserts that defendants Murphy, Avery, Laplante, Riveira, and Randolph are "sued in both individual and official

---

[2] Plaintiff does not make any mention of these defendants in his response to the Motion for Summary Judgment. See Doc. #46.

capacities." Doc. #1 at 3. Each of these defendants is alleged to be employed at HCC. See Doc. #1 at 2-3. "As a threshold matter, this court lacks subject matter jurisdiction over plaintiff's claims for damages against defendants in their official capacities. The Eleventh Amendment bars such suits unless the state has waived its immunity." Marsh v. Kirschner, 31 F. Supp. 2d 79, 80 (D. Conn. 1998).

"Section 1983 does permit individuals to seek injunctive relief against state actors in their official capacities[.]" Id. However, each of these defendants is alleged to be employed at HCC, and the Complaint alleges plaintiff is no longer confined at HCC.[3] "A prisoner's transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility." Thompson v. Carter, 284 F.3d 411, 415 (2d Cir. 2002). Accordingly, plaintiff cannot bring claims for injunctive relief against these defendants.

---

[3] The Court may take judicial notice of matters of public record. See, e.g., Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006); United States v. Rivera, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate location information); Ligon v. Doherty, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate location information). The Court takes judicial notice of the Connecticut DOC website, which reflects that Zink is currently confined at Willard-Cybulski CI. See http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=383704

All claims against all defendants in their official capacities are therefore **DISMISSED,** pursuant to 28 U.S.C. §1915A(b)(1) (as to claims for injunctive relief) and 28 U.S.C. §1915A(b)(2) (as to claims for monetary relief).

**D.   Failure to Supervise/Train Claim**

In Count Three of the Complaint, plaintiff attempts to assert claims against certain defendants for failure to supervise and/or train, alleging that "[t]he past supervision as well as training of the defendants led the plaintiff to be subject to the Constitutional deprivations listed here in." Doc. #1 at 9.

> The Second Circuit has established a three-prong test for determining whether an official is liable for failing to train or supervise his or her employees. The plaintiff must show that: (1) "a policymaker knows 'to a moral certainty' that her employees will confront a given situation;" (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation;" and (3) "the wrong choice by [an] employee will frequently cause the deprivation of a citizen's constitutional rights." Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992) (internal citations omitted). Fourth, the plaintiff must show that the alleged failure to train or supervise caused the plaintiff's injury. Id. at 298.

Inkel v. Conn. Dep't of Child. & Fams., 421 F. Supp. 2d 513, 523 (D. Conn. 2006). Plaintiff has not alleged that defendants Murphy, Avery, Riveira or Randolph actually supervised any individual who violated his rights. These defendants are all

alleged to have worked at HCC. Plaintiff has not alleged that any individual these defendants supervised or trained at HCC violated his rights. There is no allegation that these defendants failed to train or supervise any person whose conduct <u>after</u> plaintiff left HCC violated plaintiff's rights. Accordingly, all claims for failure to train or supervise are **DISMISSED**, pursuant to 28 U.S.C. §1915A(b)(1).[4]

### E. Excessive Force Claims

Plaintiff makes the following allegations regarding the use of force on April 12, 2017:

> 9. Officer Cyr found contraband inside inmate Zink cell ... C/O Cyr then informed Lt. Randolph of his findings, and several unknown officers were called to help escort Zink to RHU.
>
> 10. Responding officers surrounded Zink and told him to put his hands behind his back. Zink informed the Lt. that he was suffering from a leg injury that he sustained a few weeks prior to this incident. Zink requested a wheelchair for safety and was denied.
>
> 11. Zink was compliant with officers commands and at no time disobeyed officers. While being escorted down center block stairwell officers twisted inmate Zink wrist and fingers upward and subsequently breaking his

---

[4] Even if these claims were to survive initial review, they would be dismissed on summary judgment. Plaintiff has presented no evidence regarding any named defendant's supervision or training of any party who violated plaintiff's rights. Indeed, the Court finds herein that summary judgment is warranted as to any claims of excessive force for failure to exhaust, and that plaintiff has raised no issue of material fact as to whether he actually sought medical treatment for his wrist or hand while at HCC. As such, plaintiff has failed to establish that any genuine issue of material fact exists as to the claims in Count Three.

hand.

Doc. #1 at 4-5.

Defendants assert that the video of plaintiff's visit to medical on this date reveals that "[a]t no point during his evaluation in medical does the video show that the plaintiff claims to have sustained an injury to his wrist or hand." Doc. #39-2 at 2, ¶13. Plaintiff agrees with this statement. See Doc. #47 at 1, ¶13. Plaintiff also agrees that the "Incident Report for the escort indicates that plaintiff complained of pain to his left leg" and that it contains no indication "that plaintiff complained of any pain or injury to his hands of wrists." Doc. #39-2 at 2, ¶¶15, 16; Doc. #47 at 1, ¶¶15, 16. Indeed, plaintiff presents no evidence, and makes no argument, regarding the use of force, in opposition to the motion for summary judgment. It appears that this claim has been abandoned.

Even if plaintiff were pursuing the excessive force claim, defendants have provided evidence showing that plaintiff did not file "any grievances during the time he was housed at HCC." Doc. #39-4 at 4, ¶18. Plaintiff has not contested this evidence. Plaintiff was confined at HCC until August 21, 2017, according to plaintiff. See Doc. #47 at 2, ¶36. An inmate is required to file a grievance "within 30 calendar days of the occurrence" of which he complains. Doc. #39-4 at 14.

The PLRA "requires an inmate to exhaust" all available

administrative remedies before bringing a civil suit "with respect to prison conditions." Medina v. Somers, No. 3:10CV00299(JBA), 2011 WL 2844301, at *2 (D. Conn. July 14, 2011) (citations and quotation marks omitted). "The Supreme Court has held that this provision requires an inmate to exhaust administrative remedies before filing any type of action in federal court, regardless of whether the inmate may obtain the specific relief he desires through the administrative process." Id. Plaintiff was required to file a grievance relating to the use of force on April 12, 2017, under the PLRA. He does not allege that he did so, and defendants have provided uncontroverted evidence that he did not. Accordingly, plaintiff failed to exhaust his remedies as to any excessive force claim, and summary judgment is **GRANTED** in favor of all defendants on any such claim.

**F.   Deliberate Indifference to Serious Medical Needs**

Plaintiff's response to the motion for summary judgment focuses entirely on his claim that certain defendants were deliberately indifferent to his serious medical needs. The Court construes the Complaint as asserting these claims against Defendants Murphy, Avery, Riveira, and Laplante.[5]

---

[5] No allegations are made against defendant Randolph after the April 12, 2017, use of force incident, when it is undisputed that plaintiff was seen by medical staff. Randolph is not alleged to have been involved in any denial of medical care.

Plaintiff was a pre-trial detainee on April 12, 2017, when the use of force occurred. See Doc. #1 at 4. He was sentenced on August 21, 2017, and at that time became a sentenced inmate. See Doc. #39-8 at 2 (records showing plaintiff was admitted to custody on May 25, 2016, and started serving his sentence on August 21, 2017). His claims arising during his pretrial detention are governed by the Fourteenth Amendment; his claims arising after he was sentenced are governed by the Eighth Amendment. See Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment.").

To establish a claim under the Fourteenth Amendment for deliberate indifference to a serious medical condition, a plaintiff must satisfy two prongs. The first is an "objective prong" under which a plaintiff must show that the conditions of confinement, "either alone or in combination, posed an unreasonable risk of serious damage to his health and well being[.]" Shahid v. Doe, No. 3:21CV00849(KAD), 2021 WL 3569112, at *2 (D. Conn. Aug. 11, 2021) (citation and quotation marks omitted). The second is a "mens rea prong" under which a plaintiff must show that a particular defendant was deliberately indifferent to the "objectively serious risk of harm." Id. In

the Fourteenth Amendment context, deliberate indifference "can be shown by something akin to recklessness, and does not require proof of a malicious or callous state of mind." Charles v. Orange Cnty., 925 F.3d 73, 86 (2d Cir. 2019). "Thus, a detainee asserting a Fourteenth Amendment claim for deliberate indifference to his medical needs can allege either that the defendants knew that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants should have known that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." Id. at 87.[6]

"[A] plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution. ... The violation must be established against the supervisory official directly." Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020) (citation and quotation marks omitted).

Defendants argue:

> There is no way for the defendants to disregard a serious medical condition for which they have no knowledge of. Nor, as the incident never occurred, should they have known. The evidence shows that the plaintiff never informed the defendants of any possible pain or injury

---

[6] Because the relevant time period would encompass both Eighth and Fourteenth Amendment claims, the Court applies the Fourteenth Amendment standard here, which is more generous to plaintiff. The outcome would be the same under the Eighth Amendment standard.

to his hand until October 2017.

Doc. #39-1 at 18. Therefore, defendants contend, there cannot possibly be any genuine issue of disputed fact as to whether any defendant knew or should have known "that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." Charles, 925 F.3d at 87. The Court agrees.

    1.    Deputy Warden Murphy and Lt. Riveira

Plaintiff alleges that he "continued to complain to every officer and nurse that passed his door[]" after the April 12, 2017, incident, "[i]ncluding Deputy Warden Murphy and Lt. Riveira, who were conducting routine tours of the unit." Doc. #1 at 6. No other allegations are made against Warden Murphy or Lt. Riveira in connection with the deliberate indifference claim. Plaintiff asserts that he sent 22 inmate requests "for medical treatment of his wrist and hand[]" beginning on October 28, 2017. Doc. #47 at 4, ¶B1. Plaintiff also asserts that he was moved from HCC, where Deputy Warden Murphy and Lt. Riveira worked, on August 21, 2017. See Doc. #47 at 2, ¶36. Plaintiff was moved from HCC more than two months before he made his first written request for medical attention for his hand and wrist.

Thus, plaintiff's claims regarding his complaints to Deputy Warden Murphy and Lt. Riveira are limited to the claim that he complained verbally to them when they passed his cell during a routine tour. Plaintiff does not even contend that these

defendants heard or understood his complaints; "Neither Murphy nor Riveira listened to Zink about his obvious pain." Doc. #1 at 6. Plaintiff has offered no evidence in support of his claim that he complained to these defendants. He does not contend that he made <u>any</u> formal inmate requests regarding his hand and wrist <u>while he was confined at HCC</u>. He certainly has not produced any evidence that he complained to Deputy Warden Murphy or Lt. Riveira in writing regarding his need for treatment. But even a written complaint would not have been sufficient: "The fact that a prisoner sent a letter or written request to a supervisory official does not establish the requisite personal involvement of the supervisory official." <u>Young v. Choinski</u>, 15 F. Supp. 3d 172, 189 (D. Conn. 2014).

The mere assertion that plaintiff complained "to every officer and Nurse that passed his door ... including Deputy Warden Murphy and Lt. Riveira, who were conducting routine tours of the unit[,]" Doc. #1 at 6, is insufficient to raise any genuine dispute of material fact as to whether these defendants knew or should have known of his condition.

    2.   <u>Dr. Laplante</u>

Dr. Laplante is mentioned only once in the body of the Complaint: "Over the next several days he was told he would see M.D. Laplante. The Doctor never called him to examine him." <u>Id.</u> at 6. Plaintiff does not allege, and certainly does not produce

evidence to support, that Laplante was aware of plaintiff's alleged need for medical attention. Simply put, a defendant cannot be deliberately indifferent to a need of which he is not even aware. Accordingly, plaintiff has failed to identify any genuine dispute of material fact as to whether defendant Laplante knew or should have known of his condition.

      3.    Medical Supervisor Avery

The sole allegation against defendant Avery is the following: "Over the next several days he was told he would see M.D. Laplante. The Doctor never called him to examine him. Zink then decided to write Medical Supervisor Ken Avery and yet again received no response." Doc. #1 at 6. No evidence is offered of this alleged writing. To the contrary, as noted, plaintiff now agrees that he made no inmate requests for medical attention to his hand while he was confined at HCC. See Doc. #47 at 4, ¶B1; id. at 2, ¶36. Accordingly, plaintiff has failed to identify any genuine dispute of material fact as to whether defendant Avery knew or should have known of his condition.

In sum, plaintiff has pointed to no evidence that would create a genuine dispute of material fact as to whether any of these four defendants knew, or reasonably should have known, that he had a serious medical need, and that failing to provide treatment for his hand and/or wrist would pose a substantial risk to his health. Summary judgment is therefore **GRANTED** in

favor of defendants Murphy, Avery, Laplante, and Riveira on plaintiff's Eighth and Fourteenth Amendment claims of deliberate indifference to serious medical needs.

### G. Request to Amend Complaint

In the conclusion of his memorandum in opposition to summary judgment, plaintiff states: "The plaintiff respectfully requests permission to amend the complaint to add as defendants Kirsten Shea and Dr. Ruiz of Cheshire Correctional Facility Medical Services. At the time Thomas Zink filed his pro se complaint, he did not have access to Defendant's Exhibit D, his medical record or his general DOC records." Doc. #46 at 12.[7] The Court does not accept this statement as a motion to amend the Complaint, pursuant to Rule 15 of the Federal Rules. No actual motion has been filed. The request does not comply with Local Rule 7(f). The Court will not take action based on this passing request.

## IV. CONCLUSION

All claims against HCC, UCHC, and the John Doe Defendants; all claims against the individual defendants in their official capacities; all claims for injunctive relief; and all claims based on failure to train or supervise; are **DISMISSED**, upon review of the Complaint pursuant to 28 U.S.C. §1915A.

---

[7] The Court notes that these two parties clearly are not named as "John Doe" defendants in the original Complaint.

Summary judgment is granted as to all remaining claims, against defendants Murphy, Avery, Laplante, Riveira, and Randolph, in their individual capacities. The undisputed evidence reveals that plaintiff failed to exhaust his administrative remedies as to any claim for excessive force. As to his claims for deliberate indifference to serious medical needs, plaintiff has not introduced evidence sufficient to establish that any named defendant had knowledge of his alleged medical need sufficient to trigger personal involvement, and, thus, liability of that defendant.

"In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga, 51 F.3d at 18. Defendants have met that burden. There is no "evidence in the record that could reasonably support a jury's verdict for" plaintiff on any claim. Am. Home Assur. Co., 446 F.3d at 315 (citation and quotation marks omitted). Accordingly, and for the reasons set forth herein, the defendants' Motion for Summary Judgment [Doc. #39] is **GRANTED.**

Judgment shall enter in favor of defendants Murphy, Avery, Laplante, Riveira, and Randolph.

The Clerk shall close this case.

It is so ordered this 24th day of November, 2021, at New Haven, Connecticut.

```
                              /s/
                              _____
                              HON. SARAH A. L. MERRIAM
                              UNITED STATES DISTRICT JUDGE
```